

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------

In the Matter of the Application of BRAD BERK, TANIA     :   Index No. 110788-2008
BOWDEN, LEON BRENER, BERT COHEN,
HARVEY EISEN, FREEDMAN FAMILY TRUST u/a/d   :
7/16/87, GURNEY LIMITED, KEYWAY INVESTMENT
LIMITED, BRIAN MCDONALD, RAJAN PURI, MORAG  :   Assigned Justice:
PURI, SZ INVESTMENTS L.L.C., STUART SLOAN,        Honorable Herman Cahn
JOHN STADDON, RONALD A. WEINSTEIN, and WGS  :   **SECOND AMENDED**
VERWALTUNGS GmbH (WGS),                     **VERIFIED PETITION**
                                                 :

Petitioners,

                                                 :

v.

                                               :

Pali Holdings Inc., through its Chief Executive Officer,
President, and Secretary, and Certain Members of its Board   :
of Directors,

                                               :
Respondents.

                                               :

-------------------------------------------------------------------

      Petitioners BRAD BERK, TANIA BOWDEN, LEON BRENER, BERT COHEN,

HARVEY EISEN, FREEDMAN FAMILY TRUST U/A/D 7/16/87, GURNEY LIMITED,

KEYWAY INVESTMENT LIMITED, BRIAN MCDONALD, RAJAN PURI, MORAG PURI,

SZ INVESTMENTS L.L.C., STUART SLOAN, JOHN STADDON, RONALD A.

WEINSTEIN, and WGS VERWALTUNGS GMBH (WGS), Shareholders of Pali Holdings, Inc.

(collectively, "Petitioners"), by their attorneys, Jenner & Block, LLP, allege the following:

<u>**SUMMARY OF PETITION**</u>

1.    Petitioners are holders of 52.7% of the outstanding shares of Pali Holdings, Inc. ("Pali" or the "Company").  On July 28, 2008, these majority shareholders asked Pali's Chief Executive Officer, President and Secretary, Respondents in this proceeding, to call a special shareholder meeting for the purpose of voting on the removal of Pali's existing Board and the election of new directors.  Such a meeting is expressly provided for in the Pali bylaws.  In response, these corporate officers, supported by certain beholden members of the Pali Board, concocted a scheme to entrench themselves in power by taking action, under the guise of corporate transactions, that were in fact designed to dilute Petitioners' status as majority shareholders, and to do so before the requested shareholders' meeting took place.

2.    Respondents' actions are illegal and should not be countenanced.  They violate the Company's bylaws and charter and New York law, and subvert the wishes of a majority of Pali shareholders.  They represent a blatant and improper attempt by Respondents to avoid the consequences of a properly demanded shareholder meeting, and wrongfully perpetuate themselves in power.

3.    Petitioners bring this hybrid Article 78 proceeding for the following relief:  (a) to compel Pali's Chief Executive Officer, President, or Secretary to hold the requested special shareholders meeting at a reasonable time, meaning before any dilutive transaction takes place or has legal effect; (b) to enjoin Pali's Board from taking any action prior to the special shareholders' meeting that would impede Petitioners' lawful request and right to vote on the removal of Pali's existing directors; (c) for entry of an order declaring that the entrenchment transaction(s) scheme concocted by Respondents and supported by certain Pali directors was

improper, a violation of their fiduciary duties of loyalty and care, and void *ab initio* as violative of Pali's bylaws, New York law, and public policy (d) for entry of an order declaring Pali's Shareholder Ledger as of July 28, 2008 accurately and completely identifies all valid Pali shares and shareholders; and (e) to enjoin Respondents from taking any action prior to the upcoming special shareholder meeting that has the effect of disenfranchising, precluding, or otherwise nullifying the vote of any Petitioner identified on the Shareholder Ledger, as it existed on July 28, 2008, with the exception of any shareholder that may have sold his or her shares of Pali since the date thereof.

## THE PARTIES

4.    Pali is a domestic corporation duly formed and existing under the laws of the State of New York with its principal office at 650 Fifth Avenue, 6th Floor, New York, New York 10019.   Pali holds interests in affiliated corporations, and corporate entities, and is the sole shareholder of Pali Capital, Inc., a Delaware Corporation, and Pali Holdings AG.  Pali Capital, Inc. is a full service FINRA-registered and SEC and FINRA regulated broker-dealer.  Pali is the corporate successor of Europe American Investments, N.V. ("Euram").   In 2007, Euram shareholders became shareholders of the newly formed Pali, with each shareholder receiving stock in Pali equal to the stock held in Euram.  References in this Petition to "Pali" include Euram.

5.    As of July 28, 2008, the date of Petitioners' demand for a special shareholders meeting, Pali had 2,429,907 shares outstanding, all of which were common stock of Pali without par value.

6.    Each of the Petitioners in this proceeding is, and has been for more than six months prior to the date of the demand for a special meeting of Pali's shareholders, the owner of record and holder of shares of the common stock of Pali. The individual shareholdings of the Petitioners are shown in the chart below:

| PALI HOLDINGS, INC. | |
|---|---|
| Shareholders who have executed a Request for Special Meeting of Shareholders | |
| SHAREHOLDER | SHARES |
| Brad Berk | 40,000 |
| Tania Bowden | 19,412 |
| Leon Brener | 100,816 |
| Bert Cohen | 244,814 |
| Harvey Eisen | 16,000 |
| Freedman Family Trust a/a/d 7/16/87 | 16,000 |
| Gurney Limited | 188,000 |
| Keyway Investment Limited | 41,600 |
| Brian McDonald | 2,571 |
| Rajan Puri | 22,353 |
| Morag Puri | 16,162 |
| SZ Investments L.L.C. | 144,000 |
| Stuart Sloan | 48,000 |
| John Staddon | 85,382 |
| Ronald A. Weinstein | 49,429 |
| WGS Verwaltungs GmbH (WGS) | 244,812 |
| Totals as of July 28, 2008 | 1,279,351 |
| Shares outstanding, as set forth in 4/18/08 letter from Arthur Aufses, Corporate Counsel | 2,429,907 |
| Percentage of outstanding shares held by Petitioners as of the date of demand | 52.7% |

7.    The above list was predicated upon a shareholder ledger (the "Shareholder Ledger"), that Pali's counsel provided to petitioners' counsel on April 18, 2008, along with a cover letter, in response for petitioners' counsel's demand for a current list of Pali's shareholders. A copy of April 18, 2008 letter and the Shareholder Ledger is attached to the

4

accompanying Affirmation of Richard F. Levy (the "Levy Affirmation") as Exhibit C and incorporated herein by reference. In the April 18 cover letter, Pali's counsel stated that the Shareholder Ledger was "the Company's most current" and "that Pali believes that the list is current, as of today." (See *id.*) The list included all of the petitioners and showed that, as a group, Petitioners own 1,279,351 shares of common stock of Pali, which was 52.7% of the Company's outstanding shares as of July 28, 2008, the date of the demand for a special shareholders meeting.

8.       Respondents are the Chairman and Chief Executive Officer (Bradley Reifler), and Secretary (David Wasitowski) of Pali, as well as members of its Board of Directors (Bradley Reifler, Kevin Fisher, Richard Anthony, David Wasitowski, and John Fedders) who designed, participated in or supported the illegal activities described in this petition. The Director Respondents are each interested in the matters referred to in this Petition as that term is defined by law, and further interested because their status, compensation, benefits and participation in multi-million dollar bonus pools are set by Respondent Reifler.

## **FACTUAL BACKGROUND**

9.       Pali is the holding company for Pali Capital, Inc., a registered broker-dealer. Pali Capital, Inc. is a full service SEC and FINRA regulated broker-dealer.

10.       Section 2.3(ii) of Pali's bylaws provides as follows:

**Special Meetings.  A special meeting of shareholders**, unless otherwise provided by law … (ii) **shall be called** by the Chief Executive Officer, the President or the Secretary **on the written request**, stating the purpose or purposes of the requested meeting, of a majority of the directors or holders **of fifty percent (50%) or more of the shares of the Corporation entitled to vote in an election of directors**.  At any special meeting of shareholders only such business may be

transacted which is related to the purpose or purposes of such meeting set forth in the notice thereof given pursuant to Section 2.6 of the bylaws or in any waiver of notice thereof given pursuant to Section 2.7 of the bylaws. (emphasis added)

A copy of Pali's bylaws is attached the Levy Affirmation as Exhibit E and incorporated herein by reference.

11.     On July 28, 2008, Petitioners' counsel sent a written request for a special meeting of Pali's shareholders (the "Written Request") to the Chief Executive Officer, the President and the Secretary of Pali, and to all members of the Pali Board of Directors. This Written Request was made by a group of shareholders, who on the date of the Written Request collectively held 52.7% of the outstanding shares of Pali. A copy of that request is attached to the Levy Affirmation as Exhibit B and incorporated herein by reference.

12.     Petitioners' Written Request demanded a special meeting of Pali's shareholders be held pursuant to Section 2.3(ii) of the Company's bylaws. The Written Request asked that notice of this special meeting be sent by August 5, 2008 or within seven days (as well as the fixing of the record date for voting), and that the special meeting be held within 21 days, or by August 19, 2008.

13.     The Written Request identified the purpose of the special meeting as follows:

(i)      removing all of the present directors of the Company (or any of their successors), except director Bert Cohen, and removing any other director or directors now or hereafter appointed prior to the Special Meeting, in each case in accordance with Section 3.6(ii) of the bylaws;

(ii)     accepting the resignation of Bert Cohen simultaneously with the election of new directors as provided below;

(iii)    fixing the number of directors at six persons, which shall constitute the whole Board of Directors, in accordance with Section 3.2 of the bylaws; and

(iv)    electing as new directors the persons named below and, in addition, such other persons as the shareholders shall determine at the Special Meeting as new directors to fill vacancies created by the removal and/or resignation of present directors in accordance with Section 3.4 of the bylaws.

14.    There is obviously context to Petitioners' demand for a special shareholders meeting. Distilled, Petitioners seek the removal of Pali's Chairman and Chief Executive Officer Bradley Reifler and his dependent Board members because of substantial misconduct and self dealing. Evidence recently discovered by Petitioners shows that Respondent Reifler has, for many years, secretly run Pali as his own private fiefdom, violated fundamental rules of corporate governance, breached his fiduciary duties and duty of loyalty, engaged in repeated threats and extortionate acts, and has demonstrated his unfitness for office.

15.    These matters are identified in greater detail in a recently filed derivative complaint seeking damages and other relief. See Ronald Weinstein, et al on behalf of nominal defendant Pali Holdings, Inc. v. Bradley Reifler, et al., Index No. 601938-2008. The Court has found the derivative complaint to be related to this Petition.

16.    Respondents' reaction to Petitioners' July 28, 2008 request for a special shareholders meeting was initially silence and avoidance.

17.    Then, on August 4, 2008 at approximately 7:38 p.m., Respondents sent an e-mail notice calling for an emergency meeting of Pali's Board. The meeting was to take place on August 7, 2008. A copy of the notice and agenda for the August 7, 2008 emergency Board meeting is attached as Exhibit F to the Levy Affirmation and incorporated herein by reference.

18.     As demonstrated by the materials furnished to the Board, Pali's Chief Executive Officer (and others) had concocted a scheme in direct response to Petitioners' demand for a special shareholders meeting.   The objective of that scheme was and is to illegally thwart Petitioners' intention to replace the Chief Executive Officer and Board, and to perpetuate their positions of control and power over Pali's business affairs, contrary to the wishes of the majority of the Company's shareholders.

19.     Specifically, the Board materials disclosed that management proposed to immediately issue $156.9 million of Pali stock in three transactions, each of which would result in an immediate and significant dilution of existing shareholders' economic and voting interests in Pali.

20.     The agenda for the emergency Board meeting also indicated that management was proposing to enter into a fourth transaction (the "Grupo Mundial transaction").   No detail or materials describing that transaction was provided to the Board in conjunction with the midnight notice to Board members.

21.     Consummation of any of these four transactions would dilute Petitioners' equity interest in Pali such that, as a group, so they would no longer be a majority.   That would have the effect of preventing the majority shareholder Petitioners who requested the special meeting from exercising their right, under Pali's bylaws, to remove Respondents from office at the special meeting.

22.     On August 6, 2008, the day before the emergency directors' meeting, Petitioners' counsel sent a letter to all Pali directors demanding that they take no action at the Board meeting with the intent or that would have the effect of frustrating the will of the majority shareholders to

hold and vote at a special shareholder meeting for the purpose of removing Respondents from office. Respondents ignored that letter. A copy of the August 6th letter is attached as Exhibit G to the Levy Affirmation and incorporated herein by reference.

23.     On August 7, 2008, three hours before the emergency Board meeting, Respondents sent an e-mail with attachments describing the Grupo Mundial transaction to the two Pali board members who planned to attend the meeting by telephone. The e-mail instructed the directors, who were about to be asked by Pali Chief Executive Officer and management to vote to approve a $25 million transaction, that "[i]t is not necessary to have reviewed this material in advance." The remaining board directors had no choice but to follow that guidance from the Company -- they were only given that material upon arrival at the meeting, not before. This last second submission and guidance effectively guaranteed that the directors would be uninformed when they voted on the transactions, both as to economic terms of the loan, whether it was entirely fair to Pali and in the Company's best interests, and as to the extraordinary dilution described below. A copy of the Grupo Mundial "no need to review" e-mail is attached to the Levy Affirmation as Exhibit H and incorporated herein by reference.

24.     As proposed in those materials, the transaction involved a $25 million dollar convertible loan from Grupo Mundial with a provision -- first disclosed at the meeting -- that Grupo Mundial would be entitled to cast votes representing 324,675 shares of Pali common stock on all matters involving consideration of the number of outstanding Pali shares or votes of Pali shareholders *even though Grupo Mundial is not a shareholder and, by the terms of the debenture note, could not become a shareholder for three years.* Conferring such a voting right on Grupo Mundial would constitute a voting dilution of the existing majority shareholders to minority status.

25.     Although the Pali Board had considered a possible loan from Grupo Mundial in the past, it had never proposed to award Grupo Mundial the extraordinary, unusual, and dilutive voting right as described above. Indeed, that was an entirely new, economically valuable, and obviously material addition to undertaking any transaction between Pali and Grupo Mundial, one that had never before been raised with the Pali board, and one added only after Pali's Chief Executive Officer and others received notice of Petitioners' intent to remove the existing board.

26.     Nearly an hour before the emergency Board meeting began on August 7, 2008, Petitioners' counsel e-mailed a letter to the Pali directors stating that Petitioners intended to seek a temporary restraining order prohibiting any action that would interfere with the shareholders' right to hold and vote at a special shareholders meeting for the purpose of removing Respondents. A copy of the August 7th letter is attached as Exhibit I to the Levy Affirmation and incorporated herein by reference.

27.     Immediately thereafter, but before the emergency Board meeting started, Petitioners' counsel advised Pali's corporate counsel by telephone that this Court had scheduled a hearing on Petitioners' request for a temporary restraining order on Tuesday, August 12, 2008.

28.     Despite, and in defiance of these notices, and without expressing any plausible reason why emergency action was necessary, the Board met and voted to approve the Grupo Mundial transaction, as well as the three other newly-proposed transactions.

29.     The Board also set a date for the special shareholders meeting for October 6, 2008. That date, of course, is almost two months after Petitioners first requested such a meeting and, more importantly, after the wrongful dilution was set to take place.

30.     On August 12, 2008, counsel for the parties appeared before this Court in connection with Petitioners' Article 78 mandamus request and other relief. At that appearance, Respondents first tried to dance around questions about the status of the Grupo Mundial transaction - it was still a few days off, it might be closed already -- various theories and possibilities were offered by the Company and Respondents' counsel. Eventually, in response to an instruction from the Court, Respondents' counsel acknowledged that Pali already had initiated the Grupo Mundial transaction, that the closing was in progress at that very moment and nearly complete, and that there were only a few papers left to be exchanged between Pali and Grupo Mundial. Respondents agreed at that time and represented to the Court that, while they would proceed to closing with the Grupo Mundial transaction, they would do so only on the express conditions that no shares would be voted by Grupo Mundial without the approval of this Court, and that the appropriateness and legality of that transaction was subject to Petitioners' challenge and hearing in this Court beginning on September 16, 2008. Further, at the Court's direction, Respondents were to promptly provide written notice to Grupo Mundial that it could not exercise its new voting rights without the express approval of this Court.

## LEGAL PRINCIPLES

31.     There are a number of well-established legal principles and areas of law central to this Petition, each of which is briefly described below.

32.     **First**, under New York law, an Article 78 proceeding is the appropriate vehicle to assert a claim when a corporation or directors or officers of such a corporation fail to comply with corporate by-laws. *Auer v. Dressel*, 118 N.E.2d 590, 592 (N.Y. 1954); *Murphy v. St. Agnes Hospital*, 484 N.Y.S.2d 40 (2d Dep't 1985).

33.     Furthermore, New York courts permit hybrid actions in which Petitioners may request mandamus relief pursuant to an Article 78 petition in conjunction with a separate action for a declaratory judgment and/or preliminary and permanent injunctive relief. *See Angiolillo v. Town of Greenburgh*, 801 N.Y.S.2d 629, 630 (2d Dep't 2005); *EdCia Corp. v. McCormack*, 845 N.Y.S.2d 104, 105 (2d Dep't 2007); *Thirty West Park Corp. v. Zoning Bd. of Appeals of the City of Long Beach*, 843 N.Y.S.2d 106, 107 (2d Dep't 2007).

34.     **Second**, actions taken by directors of a corporation primarily to entrench themselves in power violate the fiduciary duties of care and loyalty owed by directors to the corporation's shareholders. *Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 625 (S.D.N.Y. 1989); *Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651, 663 (Del. Ch. 1988).

35.     For example, the issuance of new shares for the purpose of depriving existing shareholders of their right to majority control is impermissible and a breach of duty. *Phillips v. Insituform of N. Am., Inc.*, 13 Civ. A. No. 9173, 1987 WL 16285, at *8 (Del. Ch. Aug. 27, 1987); *Condec Corp. v. Lunkenheimer Co.*, 230 A.2d 769, 775 (Del. Ch. 1967); *Can. S. Oils, Ltd. v. Manabi Exploration Co.*, 96 A.2d 810, 813 (Del. Ch. 1953). Indeed, "[c]ourts have consistently found that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares or unnecessarily frustrating them in their attempt to obtain representation on the board of directors." *Int'l Banknote Co.*, 713 F. Supp. at 625.

36.     Where corporate management engages in transactions that constitute a breach of fiduciary duties, courts will invalidate those transactions. *See Ault v. Soutter*, 570 N.Y.S.2d 280, 285 (1st Dep't 1991) (affirming supreme court's order "set[ting] aside" a merger where the court determined that the merger had been procured by acts that constituted breaches of a director's

fiduciary duties); *WNH Invs., LLC v. Batzel*, Civ.A. No. 13931, 1995 WL 262248, at *8 (Del. Ch. Apr. 28, 1995) ("[A]ny action not motivated by good faith concern for the welfare of the corporation and its stockholders will be set aside as a breach of fiduciary duty."); *Insituform*, 1987WL16285, at *11 (recognizing that if management procured a merger by "wrongful" means, the transaction would be "invalidated" and the "dissolution of the merger" would be ordered); *Condec Corp.*, 230 A.2d at 777 ("cancelling" 75,000 shares of stock issued by management primarily to maintain control of the corporation).

37.     A Board member who has a financial interest in maintaining a position with the corporation "cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from" a decision regarding his or her removal. *See Nevins v. Bryan*, 885 A.2d 233, 251 (Del. Ch. 2005).  For this reason, a transaction approved by interested directors to maintain their positions in the corporation is void. *See* N.Y. Bus. Corp. Law, § 713.

38.     **Third**, it is important to recognize that the shareholder franchise is the "'ideological underpinning' upon which the legitimacy of the directors' managerial power rests." *MM Cos. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1127 (Del. 2003).

39.     A "stockholder's ability to participate in corporate governance through the election of directors is a fundamental part of our corporate law.  Thus, there is a 'general policy against disenfranchisement.'" *Preston v. Allison*, 650 A.2d 646, 649 (Del. 1994); 18A Am. Jur. 2d Corporations § 850.

40.     Avoiding shareholder disenfranchisement is especially important because as a general rule, "shareholders have only two protections against perceived inadequate business

performance. They may sell their stock . . . or they may vote to replace incumbent board members." *Blasius Indus., Inc.*, 564 A.2d at 659.

41. To this end, the primary purpose of a bylaw provision requiring corporate management to call a special shareholder meeting is "to give the stockholders the right to take certain action when they are dissatisfied with the current management or when the current management will not honor their wishes." *See Richman v. DeVal Aerodynamics, Inc.*, 183 A.2d 569, 570 (Del. Ch. 1962).

42. **Fourth**, when bylaws state that directors "shall" call a special meeting and the requisite number of shareholders request a meeting, the meeting should be called within a "reasonable time." *See Weisblum v. Li Falco Mfg. Co.*, 84 N.Y.S.2d 162, 164, 168 (N.Y. Sup. Ct. 1947).

43. Because bylaws are a contract between shareholders and a corporation, what constitutes a "reasonable time" depends on the facts and circumstances of a given case. *See Parker v. Booker*, 822 N.Y.S.2d 156, 158 (N.Y. 2d Dep't 2006); *Gentile v. Singlepoint Fin. Inc.*, 788 A.2d 111, 113 (Del. 2001) ("It is a fundamental principle that the rules used to interpret statutes, contracts, and other written instruments are applicable when construing corporate charters and bylaws.").

44. Calling a special shareholder meeting at a time and under circumstances that would defeat the very right Petitioners seek to exercise at the meeting can in no way be deemed "reasonable." *See Klein v. Opert*, 631 N.Y.S.2d 70, 72 (2d Dep't 1995) (holding that a time for performance that would prevent a party from performing is not reasonable); *Glazer v.*

*Klughaupt*, 185 A. 8, 9 (N.J. 1936) (holding a time that would deny the very right at issue in the contract is not reasonable).

45.     **Fifth**, one of the "most venerable precepts" of corporate law is that "inequitable action does not become permissible simply because it is legally possible." *MM Cos.*, 813 A.2d at 1132 (*quoting Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437, 439 (Del. 1971)). Courts "will not allow the wrongful subversion of corporate democracy by manipulation of the corporate machinery or by machinations under the cloak of" law. *MM Cos.*, 813 A.2d at 1127.

46.     **Sixth**, a contract that is contrary to public policy is void. *Pecora v. Cerillo*, 621 N.Y.S.2d 363, 366 (2d Dep't 1995); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 580 (2d Cir. 2006). Under New York law, where only "part of a contract is contrary to public policy and therefore unenforceable, a court may nevertheless enforce the remainder of the contract." *Beth Israel Med. Ctr.*, 448 F.3d at 581; *see also* Restatement (Second) of Contracts §184; N.Y. Bus. Corp. Law, § 602; *Richman*, 183 A.2d at 569.

47.     **Seventh**, this Court has broad powers to grant Petitioners' requests for relief. *See Kaminsky v. Kahn*, 259 N.Y.S.2d 716, 721 (1st Dep't 1965). "The court, within the framework of the pleadings in any case, may draw upon its broad reservoir of powers established by law or formulated under the principles of equity, and utilize any of them to afford complete relief to a party." *Id.*

48.     It is axiomatic that courts should consider the particular circumstances of a case when fashioning appropriate relief. *Id.* at 722 ("The plaintiff's right to equitable relief is to be viewed in light of the true character and over-all effect of the transaction between the parties and

in light of the nature, quality and effect of the defendant's wrongful acts in derogation of the plaintiff's rights.") (internal citations omitted); *People v. Darling*, 366 N.Y.S.2d 982, 986 (N.Y. Sup. Ct. 1975) ("Possessed of immense and inherent power, the Supreme Court may award a party appropriate and complete relief, in accord with the exigencies of the case, to do justice and to promote equity."); *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985) ("Although the [equitable relief] is broad, it is consistent with the court's equitable power to devise whatever remedy it believes in its discretion 'is necessary to make . . . injured parties whole.'").

### FIRST CAUSE OF ACTION

(Writ of Mandamus Pursuant to Article 78 of the N.Y. C.P.L.R.)

49.     Petitioners repeat and reallege every allegation in paragraphs 1 – 48 as if set forth herein.

50.     As explained above, an Article 78 proceeding is the appropriate vehicle to assert a claim when a corporation or directors of such a corporation fail to comply with corporate by-laws.

51.     Petitioners have met all requirements of the bylaws and New York law for causing Pali to call and hold a special shareholders meeting for the legal and proper purpose of removing Respondents from office.

52.     Petitioners have a clear legal right under Pali's bylaws to demand a special shareholder meeting be held "to give the stockholders the right to take certain action when they

are dissatisfied with the current management or when the current management will not honor their wishes." *See Richman*, 183 A.2d at 569.

53.     Respondents have taken actions to thwart the efforts of the majority shareholders to exercise their rights to vote at a special meeting to remove Respondents from power. Respondents' actions are inequitable and impermissible abuses of the corporate machinery. *See MM Cos.*, 813 A.2d at 1127, 1133; *Schnell*, 285 A.2d at 439.

54.     Respondents' conduct is erroneous as a matter of law, arbitrary, capricious, and unreasonable. N.Y. C.P.L.R. § 7803.3.

55.     Petitioners have exhausted their administrative remedies and have no adequate remedy at law.

56.     As a result, this Court should grant Petitioners a writ of mandamus ordering Respondents to comply with Pali's bylaws by allowing Petitioners to effectuate their right to hold a special meeting to "take action when they are dissatisfied with the current management without interference by management to thwart that right."

## SECOND CAUSE OF ACTION

(A Temporary Restraining Order and Injunctive Relief)

57.     Petitioners repeat and reallege every allegation in paragraphs 1 – 56 as if set forth herein.

58.     To effectuate their rights to hold and vote at a special shareholders meeting for the purpose of removing Respondents from the Board, Petitioners seek the grant of a temporary restraining order and other injunctive relief:

(a)     prohibiting Respondents from taking any further dilutive action between now and the special shareholders meeting and

(b)     preventing the exercise at the special shareholders meeting (or at any time prior to that meeting) of any voting rights granted to Grupo Mundial.

## THIRD CAUSE OF ACTION

(Order Declaring Respondents' Actions a Breach of Respondents'
Fiduciary Duties and Impermissible Attempts at Entrenchment)

59.     Petitioners repeat and reallege every allegation in paragraphs 1 – 58 as if set forth herein.

60.     After learning of Petitioners' demand for a special shareholders meeting to remove Respondents from office, Respondents called a special Board meeting to thwart Petitioners' rights as majority shareholders and to entrench themselves in power against the will of the shareholder franchise.

61.     Respondents took this action without reasonable investigation of the proposed issuance of shares, in a bad faith effort to dilute Petitioners' rights as majority shareholders, and to entrench themselves in power.

62.     Respondents' actions violated -- and will continue to violate -- their duties of loyalty and care to Pali and to Petitioners.

63.     Moreover, Respondents took these actions for the impermissible purpose of depriving Petitioners of their majority stake in Pali without any compelling justification.

64.     As a result, this Court should declare Respondents' grant of voting rights to Grupo Mundial a breach of Respondents' fiduciary duties of care and loyalty and an improper attempt at entrenchment.

## FOURTH CAUSE OF ACTION

(Order Declaring Respondents' Actions Invalid and Void *ab Initio*)

65.     Petitioners repeat and reallege every allegation in paragraphs 1 – 64 as if set forth herein.

66.     Because Respondents' actions constitute a breach of fiduciary duties, an impermissible attempt at entrenchment, self-interested transactions, and violate the Pali bylaws and corporate charter, this Court should declare the portion of the Grupo Mundial transaction conferring immediate voting rights -- or in the alternative the entire transaction -- invalid, illegal and void *ab initio* as violative of New York law and public policy.

## FIFTH CAUSE OF ACTION

(Order Declaring the Shareholder Ledger Was Accurate)

67.     Petitioners repeat and reallege every allegation in paragraphs 1 – 66 as if set forth herein.

68. In a further attempt to thwart Petitioners' rights as majority shareholders and to entrench themselves in power against the will of the shareholder franchise, Respondents have raised and/or will raise challenges to the validity of shares for certain shareholders.

69. However, Pali has failed to overcome the presumption that the Shareholder Ledger, as it existed on July 28, 2008, is prima facie evidence of the actual shareholders of Pali as of that date and their interests in the Company.

70. In accordance with N.Y. B.C.L. Section 624(a), Pali's books and records, including its Shareholder Ledger, "shall be prima facie evidence of the facts therein stated in favor of the plaintiff in any . . . special proceeding against such corporation or any of its officers, directors or shareholders."

71. On April 18, 2008, Pali's counsel provided petitioners' counsel a letter and the Shareholder Ledger. Pali's counsel stated that the Shareholder Ledger was "the Company's most current" and "that Pali believes that the list is current, as of today." (See *id.*) The Shareholder Ledger included all of the Petitioners and showed that collectively they own 52.7% of Pali's outstanding shares.

72. Respondents have failed to offer any evidence to challenge the prima facie evidence contained in the Shareholder Ledger.

73. Accordingly, this Court should declare that the Shareholder Ledger is conclusive and final evidence of the names of the actual, valid shareholders of Pali and their interest in the Company.

## SIXTH CAUSE OF ACTION
(Injunctive Relief)

74.     Petitioners repeat and reallege every allegation in paragraphs 1 – 73 as if set forth herein.

75.     The Shareholder Ledger, as it existed on July 28, 2008, is final and conclusive evidence and fact of the actual shareholders of Pali as of that date who are entitled to vote at the special shareholders meeting.

76.     To effectuate their rights to hold and vote at a special shareholders meeting for the purpose of removing Respondents from the Board, Petitioners seek the grant of injunctive relief:

(a)     prohibiting Respondents from taking any action prior to the upcoming special shareholder meeting that has the effect of disenfranchising, precluding, or otherwise nullifying the vote of any Petitioner identified on the Shareholder Ledger as it existed on July 28, 2008, with the exception of any shareholder that may have sold his or her shares since the date thereof.

## RELIEF REQUESTED

WHEREFORE, Petitioners request a judgment be entered:

(a)     granting a writ of mandamus pursuant to Article 78 of the New York Civil Practice Law and Rules to compel Respondents to take all necessary steps to hold a special shareholders meeting in accordance with the bylaws of Pali Holdings, Inc. ("Pali"), within a reasonable period of time, as demanded by Petitioners;

(b)     issuing preliminary injunctive relief, ancillary to and in aid of Petitioners' Article 78 right to mandamus: (i) preventing Respondents from taking any action that

would have the effect of diluting Petitioners' shareholder equity interest in Pali prior to the special shareholder meeting and vote and (ii) precluding the exercise of any voting rights of equity shares awarded to Grupo Mundial or any other party between the date of Petitioners' demand for a special shareholders meeting and the vote at that meeting; and

(c)    with respect to Respondents' recent attempt to dilute Petitioners' majority shareholder status and frustrate Petitioners' rights under the Pali bylaws to vote out the existing Pali board of directors, declaring that: (i) Respondents' last-minute attempt -- following receipt of Petitioners' demand for a shareholders meeting -- to dilute Petitioners' majority shareholder status prior to the shareholders meeting, in particular by causing Pali to issue equity shares or otherwise provide equity voting rights to Grupo Mundial, was a breach of Respondents' fiduciary duties to Pali and Petitioners, was an act taken in bad faith, and was done for the primary purpose of entrenching the existing management and board in the face of the majority shareholders' known intention to remove them and (ii) for the reasons thus stated, that portion of the Pali/Grupo Mundial transaction conveying Pali equity shares and/or voting rights to Grupo Mundial is void *ab initio* as violative of public policy, Pali's bylaws, and other governing New York law and is a product of Respondents' illegal actions and breaches of fiduciary duties;

(d)    declaring Pali's Shareholder Ledger as of July 28, 2008 accurately and completely identifies all valid Pali shares and shareholders;

(e)    issuing preliminary injunctive relief, ancillary to and in aid of Petitioners' Article 78 right to mandamus: (i) prohibiting Respondents from taking any action prior to the upcoming special shareholder meeting that has the effect of disenfranchising, precluding, or otherwise nullifying the vote of any Petitioner identified on the Shareholder Ledger, as it existed on July 28, 2008, with the exception of any shareholder that may have sold his or her shares of Pali since the date thereof; and

(f)    providing for such other relief as the Court deems just and proper.

New York, New York
Dated: September 16, 2008

Respectfully submitted,


JENNER & BLOCK LLP


By: *Richard F. Levy /mm*

Richard F. Levy
Carletta F. Higginson
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:    (212) 891-1600
Facsimile:    (212) 891-1699


*Attorneys for Petitioners*

Of Counsel:
Ross B. Bricker
John F. Ward, Jr.
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
Telephone:    (312) 222-9350
Facsimile:    (312) 527-0484

## VERIFICATION

STATE OF NEW YORK   )
                           )
COUNTY OF NEW YORK  )

      RICHARD F. LEVY, ESQ., an attorney duly admitted to practice law in the Courts of the State of New York, affirm that I am an partner of the law firm Jenner & Block LLP, attorneys of record for the Petitioners ("Petitioners"), in the within action; that I have read the foregoing Petition and know the contents thereof; that the same is true to my knowledge based on facts and information provided to me by Petitioners or by others on behalf of Petitioners, and based on the files and records thereof. I further say that the reason this Verification is made by me and not by Petitioners is that Petitioners are not located within the County of New York where I maintain my office.

      I declare under penalty of perjury that the foregoing is true and correct and that this verification is executed this 16th day of September, 2008, at New York, New York.

                                  _Richard F. Levy_
                                  RICHARD F. LEVY