economically valuable, and obviously material addition to undertaking any transaction between Pali and Grupo Mundial, one that had never before been raised with the Pali board, and one added only after Reifler received notice of the Majority Shareholders' intent to remove the existing board. Notwithstanding the significant value of the right to vote the largest single block of outstanding shares, Mundial was not asked to pay anything for that right.

51.     Nearly an hour before the emergency Board meeting began on August 7, 2008, the Majority Shareholders' counsel sent an email to the Pali directors stating that the Majority Shareholders intended to seek a temporary restraining order prohibiting any action that would interfere with the shareholders' right to hold and vote at a special shareholders meeting for the purpose of removing Reifler and his cohorts. Immediately thereafter, but before the emergency Board meeting started, the Majority Shareholders' counsel advised the Directors, including Reifler, that a Justice of the New York Supreme Court had scheduled a hearing on the request for a temporary restraining order for Tuesday, August 12, 2008. Despite, and in defiance of, these notices, and without expressing any plausible reason why emergency action was necessary, the Board met and voted to approve the Mundial Dilution. The Board also set the date for the special shareholders meeting for October 6, 2008. That date was almost two months after the Majority Shareholders' first request for a meeting, and, more importantly, after the wrongful dilution was set to take place.

52.     On August 12, 2008, counsel for the parties appeared before a Justice of the New York Supreme Court in connection with the Majority Shareholders' Article 78 mandamus request and other relief. Reifler and his counsel  first tried to dance around questions about the status of the Grupo Mundial transaction -- it was still a few days off, it might be closed already -- and various theories and possibilities were offered by Reifler's and Pali's counsel.

Eventually, in response to an instruction from the Court, Reifler's counsel acknowledged that Pali already had initiated the Grupo Mundial transaction, that the closing was in progress at that very moment and nearly complete, and that there were only a few papers left to be exchanged between Pali and Grupo Mundial.   Hearing this, the Court effectively temporarily enjoined Mundial from voting its shares pending a September 16 hearing on a permanent injunction.

53.   Following the hearing on August 12, documents were exchanged and depositions taken.  This discovery revealed that contrary to Reifler's sworn testimony, the extraordinary voting rights were given to Mundial because Reifler wanted it that way and not because Mundial demanded those rights.  Ultimately, on December 9, 2008, Mundial agreed that it would not exercise any voting rights except to elect one Mundial designee as a director. Getting there cost the company at least one third of the nearly $12 million in attorney's fees that Reifler caused Pali to spend to illegally entrench himself.

### (ii)   Reifler's Attempt to *Disenfranchise* The Majority

54.   When Reifler's initial attempt to dilute the Majority Shareholders through the Mundial Transaction stumbled because the Majority Shareholders were able to get an order from the Court temporarily enjoining the voting of the dilutive Mundial shares, Reifler directed a campaign intended to disenfranchise Pali shareholders John Staddon, Wolfgang Stolz and Leon Brener.  These three were, on July 28, 2008, owners of a significant portion of the outstanding shares of Pali, and strong supporters of the Majority Shareholders' efforts to oust Reifler.  Reifler raised these challenges in the Court proceedings in the face of overwhelming evidence that the challenges were entirely without merit, and inconsistent with the corporate records of Pali and Reifler's prior treatment of the three as shareholders.  Counsel to the Majority Shareholders was able to locate a shareholders' register that predated Reifler's

attempts at disenfranchisement and that showed each of these persons was a shareholder entitled to vote his shares. At about the same time this shareholders' register was created, Reifler admitted to Staddon that his challenges were "procedural bullshit" designed to discourage a proxy fight

55.     Notwithstanding this clear evidence, Reifler, from August to November 2008, caused Pali to spend millions of dollars in pursuing these meritless claims. At Reifler's instruction, his and Pali's counsel required the production of hundreds of thousands of pages of documents, took thousands of pages of deposition testimony involving three separate trips to London, England, where the shareholders he was attempting to disenfranchise resided, and was responsible for hundreds if not thousands of pages of Court filings.

### (iii)  **The Forgery**

56.    When the Mundial Dilution failed, and when his attempts to disenfranchise members of the Majority Group holding a significant portion of the outstanding shares failed too, Reifler, faced with certain defeat in his attempts to illegally entrench himself, resorted to a criminal act. He has confessed that he *forged* the signature of John Staddon, a 10.2 % shareholder, on a proxy purporting to give Reifler the right to vote Staddon's shares. He then caused the forged document to be presented to a Justice of the Supreme Court as purported evidence that the Majority Shareholders no longer were a majority.

57.    On October 31, 2008, emails, previously unavailable to the Majority Shareholders, established, without question, that it was Reifler who created and forged the document and caused it to be proffered to the Court. He was forced to resign that day, and shortly thereafter a formal Grand Jury investigation by the New York District Attorney commenced and continues to this day.

58.   Reifler caused Pali to pay more than $11,600,000 to attorneys for Pali ($8.6 million), attorneys for Reifler and Wasitowski ($1 million) and various consultants ($2 million) to support his illegal entrenchment actions, and caused the Majority Shareholders millions more in their efforts to contest Reifler's illegal entrenchment efforts.  His actions violated the Company's bylaws and charter and New York law, and subverted the wishes of the Majority Shareholders. Reifler's conduct was a blatant and improper attempt to avoid the consequences of a properly demanded shareholder meeting, and wrongfully perpetuate himself in power.

## E.   THEFTS OF CORPORATE OPPORTUNITY BY REIFLER

59.   It is axiomatic that a corporate officer or director may not take a business opportunity for his own if: (1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimitable to his duties to the corporation.

60.   As Chief Executive Officer, Chairman of the Board of Directors and a Director, Reifler had a fiduciary duty and duty of loyalty to Pali that required that he not take for himself any corporate opportunity reasonably incident to Pali's present or prospective business, and one in which Pali had the capacity to engage.  In addition, Reifler was prohibited by Section 7.1 of his Employment Agreement from acting as an officer, employee, partner, director, member, creditor, consultant, agent or advisor to any "Competitive Enterprise;" forming or acquiring an interest in a "Competitive Enterprise;" employing, engaging, or soliciting any employee or independent contractor of Pali; and soliciting or inducing any client of Pali to cease doing business with Pali.

61.   The Corporate Opportunity doctrine, like other rules of corporate governance,

did not deter Reifler from seizing numerous opportunities for investment and profit that were incident to Pali's present or prospective business. Neither did his Employment Agreement which prohibited such conduct. For example, Reifler took commissions from and invested in hedge funds notwithstanding that Pali's clients are focused on hedge funds. He personally invested in Genesis Securities, LLC, a registered broker dealer focusing on institutional clients, even though Pali's business is focused on institutional hedge fund clients. Further, Reifler personally invested in Logos Capital, Sky Blue Capital and other entities, all of which were opportunities that were incident to Pali's present or prospective business. None of these opportunities were ever fully, openly or properly presented to the Board of Directors of Pali for their independent consideration of whether these opportunities should have been further investigated and considered by that Board.

62.    The full extent of Reifler's failure to bring corporate opportunities to the attention of the Board is not presently known, but is believed to be extensive. Because the Independent Directors were denied access to books and records, it was not possible, prior to the discovery of Reifler's forgery and his forced resignation, to determine all of the instances of theft of corporate opportunity engaged in by Reifler.

63.    Some of the more egregious instances of theft of corporate opportunity that Pali is presently aware of include these:

### (i)    Reifler's Theft  of Valuable Burnham Hill Warrants

64.    On August 1, 2003, Burnham Hill and Pali entered into an Operating Agreement which was amended and restated on January 1, 2007 (together, the "Burnham Hill Agreements").

65.    Pursuant to the Burnham Hill Agreements, Pali received cash fees and

Placement Agent Warrants from Burnham Hill transactions.

66.    A "Warrant" is a security that provides its owner the option of purchasing a set number of shares of a company at a set price. Regardless of whether the exercise price of a Warrant is above or below the price of the underlying stock, a Warrant has value because it provides unlimited upside, if the price of the underlying stock increases, but no downside if the price of the underlying stock decreases, because the holder of the warrant need not exercise it. Warrants are often given to investment banks as compensation for underwriting services. Such Warrants are known as "Placement Agent Warrants."

67.    Warrants and Placement Agent Warrants are a form of revenue as described by the Financial Accounting Standards Board ("FASB") in FASB's Statement of Financial Account Concepts 6, Paragraphs 78-79.

68.    Through acts of improper conduct, Reifler caused the valuable Placement Agent Warrants from Burnham Hill transactions to be issued to himself directly, instead of Pali, where they belonged. When the value of those Placement Agent Warrants later increased, Reifler sold them and took the profits for himself.

69.    Reifler incorrectly and fraudulently claimed, in a letter to Pali's Directors sent on April 11, 2008, that all of the Placement Agent Warrants he received were issued to him only "as inducements" for him to personally invest directly in the issuing company. This representation to the Directors was false and was directly contradicted by representations Reifler provided for inclusion in SEC filings. What he told the SEC,  was that he received Placement Agent Warrants "as compensation for services as a representative of Burnham Hill Partners."

    **(ii)**    **Reifler's Theft of Corporate**
            **Opportunity Relating to Logos Capital**

70.     In 2004, Pali established a relationship with a hedge fund called Logos Capital ("Logos"). The relationship involved Pali's assistance in raising capital for Logos.

71.     Despite Pali's established relationship with Logos, Reifler caused significant payments from Logos to be made to Reifler rather than to Pali.

72.     Preliminary investigation of thousands of documents stored by Reifler on Pali premises appear to indicate that Reifler engaged in significant additional instances of theft of corporate opportunity. Because the Independent Directors were denied access to books and records, it was not possible, prior to the discovery of Reifler's forgery and his forced resignation, to determine all of the instances of theft of corporate opportunity engaged in by Reifler.

**F.**     **REIFLER'S ABUSE OF CORPORATE CONTROL**

73.     A Director of a corporation incorporated in New York has an "absolute, unconditional" right to books and records of that corporation, even if that director is "hostile, adverse, or a competitor of the corporation." That right, recognized by the New York Court of Appeals and a dozen or more Appellate Division reported decisions, is rooted in common law principles and is based on the fundamental proposition that "[i]n order to properly perform his directing duties, a corporate director must, of course, keep himself informed as to the policies, business and affairs of the corporation, and as to the acts of its officers."[7] As set forth below,

---

[7]  "[A]ll that he need show is that he is a director of the company, that he has demanded permission to examine and that his demand has been refused. . . His object in seeking the examination is immaterial. His right of inspection is not dependent upon his being able to satisfy other officers of the corporation that his motives are adequate. *Davis v. Keilshohn Offset Co.*, 79 N.Y.S.2d 540, 541-542 (1st Dep't 1948).

Reifler abused his corporate control by repeatedly directing that the Independent Directors

seeking information concerning corporate books and records be denied those rights.

74.     Through counsel, an Independent Director sought explanations concerning

apparent improprieties, and requested books and records from Pali bearing upon such issues. These

requests for explanations were specific, were initially not accusatory and sought particular

identified books and records bearing directly on the inquiries being made about Reifler's conduct

and compensation.   Reifler, had been advised repeatedly of the Independent Director's

undoubted right to inspect Pali's books and records. He nevertheless repeatedly ignored and

refused to deal with his requests and instructed Pali's attorney to that effect.   For example, on

June 16, 2008, Reifler directed Pali's counsel to refuse the Independent Director's requests on

the purported ground that he was hostile -- notwithstanding that Reifler and the attorneys knew

that such a defense has been repeatedly and unanimously rejected by the New York Court of

Appeals and numerous Appellate Division Decisions.

75.     Some examples of the intransigent refusals to comply with applicable law

by Reifler and Wasitowski follow:

(a)     <u>Requests For Information From Pali's Independent Auditors.</u>

On May 12, 2008, the Independent Director, a member of the Audit
Committee of Pali requested that J.H. Cohn, Pali's Independent
Auditors, provide information and workpapers related to Reifler's
Compensation.

*This request was initially ignored. When the request was repeated on June 11,
the auditors responded that they" had been unable to obtain consent from Pal.
to release the information and workpapers requested in your May 12 letter."*

(b)     <u>Requests Concerning Reifler's Cash Compensation.</u>

On seven different dates, written requests were sent requesting (i) Board
discussion of Reifler's Compensation issues (ii) Board minutes approving
Reifler's Compensation, if they existed, (iii) identity of persons

authorizing payments to Reifler (iv) documents relating to deferred compensation due to Reifler.

*The requests were ignored and ruled out of order by Reifler when raised at Board meetings. A purported summary of Reifler 's Compensation was delivered in March, marked "interim. " That report is fundamentally incorrect and misleading, as set forth below. Numerous requests for workpapers and subsequent versions of that report -- as well as all other requests relating to compensation -- were ignored.*

(c)   <u>Requests For List of Persons Entitled to Receive Shares and Rights to Acquire Shares Held By Reifler. Requested three times.</u>

*This information was sought in order to determine the number of fully diluted shares of Pali Holdings, Inc. that are outstanding. Each request was ignored.*

(d)   <u>Requests For Documents Relating to Burnham Hill Transactions in Which Reifler Received Placement Agent Warrants Earned By Pali.</u>

Three requests for list of all transactions in which Reifler received Warrants and for all documents relating to relationship with Burnham Hill and for Board discussion of Burnham Hill issues.

Requests for list of transactions were ignored. Request for Board Discussion was ignored. Operating Agreements were provided with a note from Pali counsel, Kramer Levin, that they were "surprised" that Operating Agreements existed.

(e)   <u>Requests Concerning Fees and Interests Received by Reifler from Pali Clients.</u>

*Ignored.*

(f)   <u>Legal Memorandum Establishing Director's Rights to Books and Records</u>

Three requests for response or explanation for refusal to comply with New York law giving Directors an "absolute, unconditional" right to books and records even if that director is "hostile, adverse, or a competitor of the corporation."

*Ignored.*

## CAUSES OF ACTION

**I.   Breach Of Fiduciary Duty - Reifler**

76.   Pali realleges all of the preceding paragraphs of this pleading as if fully set forth herein.

77.     As the Chairman and Chief Executive Officer of Pali, Reifler owed strict fiduciary duties to the Company, including duties of care, loyalty, honesty, and good faith, and he was required to act in Pali's best interests and not for his personal benefit.

78.     By engaging in the conduct described in detail above, Reifler deliberately, knowingly and in bad faith breached his fiduciary duties to Pali.

79.     As a direct and proximate result of Reifler's breach of fiduciary duties, Pali has been damaged by at least:

(a)     the value of assets Reifler misappropriated;

(b)     all payment made or accrued to him pursuant to his written Employment Agreement, because he has repeatedly engaged in acts that constitute multiple breach of that Employment Agreement;

(c)     all compensation paid to Reifler that was not authorized by the compensation committee and the board of directors of Pali in accordance with a process that was "entirely fair" to Pali;

(d)     damages to Pali caused by Reifler's demanding and receiving from Pali clients cash and interests in ventures in exchange for fees that such clients would otherwise have paid to Pali;

(e)     the value of corporate opportunities that Reifler should have, but did not, make available to Pali and did not bring to the attention of its Board of Directors;

(f)     the value of all compensation paid to Reifler during his period of faithlessness beginning with Reifler's first breach of fiduciary duty;

(g)     the full amount of compensation which Reifler now claims Pali owes to Reifler but which Reifler has forfeited by his faithless conduct;

(h)     the full amount of attorney's fees and consultant's fees incurred by Pali as a result of Reifler's illegal entrenchment efforts and other breaches of fiduciary duties;

(i)     the full amount of attorney's fees advanced to Reifler for his defense of the derivative actions and Article 78 proceedings;

(j)     the benefits Reifler received arising from his using the facilities, goodwill and infrastructure of Pali to support his personal investments and activities;

(k)     damages arising from Reifler's failure to provide faithful and competent services;

(l)     money and other things of value that Reifler caused to be paid or promised to Wasitowski and others to induce their cooperation or buy their silence;

(m)     damages caused by Reifler's fraud; and

(n)     damages equal to the diminution in value of the stock of Pali caused by Reifler's actions.

80.     As a direct and proximate result of Reifler's breach of fiduciary duties, Pali has been damaged in additional amounts that can only be determined in arbitration when facts that have been deliberately concealed by Reifler have been discovered.

81.     Because of the willful, wanton, and intentional nature of Reifler's conduct and his abuse of his position of trust, Reifler is also liable for punitive damages, in an amount to be determined in arbitration.

## II.     Breach of Fiduciary Duty - Wasitowski

82.     Pali realleges all of the preceding paragraphs of this pleading as if fully set forth herein.

83.     As an executive officer and director of Pali, Wasitowski owed Pali strict fiduciary duties, including duties of care, loyalty, honesty and disclosure, and he was required to act in Pali's best interests and not for his  personal benefit.

84.     Wasitowski breached these duties by:

(a)     concealing from the Compensation Committee and the other Directors the true facts concerning the amount of Reifler's purported compensation, the Burnham Hill transactions, the hidden corporate opportunities taken by Reifler and the breaches by Reifler of the provisions of his Employment Agreement;

(b)     avoiding obtaining Compensation Committee and Board approval for Reifler's purported compensation and agreements related thereto and enabling him to collect improper and unauthorized compensation;

(c)     denying an Independent Director his absolute right to inspect books and records of the company;

(d)     supporting Reifler's illegal scheme to entrench himself in power; and

(e)     engaging in a scheme to forge a proxy agreement designed to deny the Majority Shareholders their right to choose Pali's directors.

85.     As a direct and proximate result of Wasitowki's breaches of fiduciary duties, Pali has been damaged in amounts that can only be determined in arbitration when facts that have been deliberately concealed by Reifler and Wasitowski have been discovered.

86.     Because of the willful, wanton, and intentional nature of Wasitowski's conduct and his abuse of his positions of trust, Wasitowski should also be liable for punitive damages, in an amount to be determined through this arbitration.

## III.    Fraud - Reifler

87.     Pali realleges all of the preceding paragraphs of this pleading as if fully set forth herein.

88.     For many years, Reifler made misrepresentations to Pali, its Board, and to others as set forth above.

89.     Moreover, Reifler fraudulently concealed facts from the Board and its Compensation Committee, namely all the amounts received by him as purported compensation and the benefits arising from his illegal conduct.

90.     Reifler made his misrepresentations and failed to disclose his illegal conduct, knowing that Pali, the Board and its compensation Committee would rely on his misrepresentations.

91.     Each of the misrepresentations was made for the purpose of inducing Pali, the Board and its Compensation Committee to rely on them.

92.     The Company, the Board, its Compensation Committee, and others did

in fact rely on such representations, in ignorance of the falsity of the representations, and Pali

has been and continues to be damaged as a result of the belated discovery of these facts

regarding unauthorized compensation and benefits received by Reifler, his taking of corporate

opportunities, and his violations of his employment Agreement.

93.     Because of the willful, wanton, and intentional nature of Reifler's

conduct and his abuse of his position of trust, Reifler is also liable for punitive damages, in an

amount to be determined in arbitration.

## IV.     Accounting - Reifler

94.     Pali realleges all of the preceding paragraphs of this pleading as if fully

set forth herein.

95.     Reifler breached his fiduciary and other duties to the Company and failed

to perform as required by his Employment Agreement in various ways and profited from his

breaches of duty through the receipt of unauthorized and undisclosed amounts of money and

credits, interest free use of millions of dollars of Pali's funds, profits from corporate

opportunities belonging to Pali, profits from his taking of Placement Agent Warrants in

connection with the Burnham Hill transactions and other things of value taken in violation of his

fiduciary duties.

96.     Reifler commingled the funds he received in breach of his fiduciary

duties and the proceeds obtained on his use of these funds, with his own funds.

97.     As a fiduciary, Reifler must account to his principal, Pali, for the funds

that he received during the course of his employment, an amount that includes tens of millions of

dollars and perhaps more, together with an accounting for the interest on the funds he obtained

and benefits he obtained as a result of his wrongful use of Pali's funds.

98.     Reifler must therefore render an account to Pali for such funds.

## V.     Breach Of Contract - Reifler

99.     Pali realleges all of the preceding paragraphs of this pleading as if fully

set forth herein.

100.    Reifler breached the terms of his Employment Agreement in the manner

set forth above, and deliberately concealed such breaches from the Board, its Compensation

Committee and Pali's shareholders. Among others, Reifler:

(a)     failed to disclose the material fact as to Reifler's relationship or interest as to
        every contract or transaction with Reifler to the Board of Directors to permit the
        Board, in good faith, to authorize the contract or transaction by the affirmative
        vote of a majority of the disinterested directors;

(b)     failed to ensure that such contract or transaction was "entirely fair," to Pali,
        both economically and in the process by which it was approved, at the time it was
        authorized and approved by the Board of Directors;

        (i)     has violated every one of the agreements set forth in the preceding
                paragraph. Specifically, as set forth in the foregoing paragraphs of
                this pleading;

        (ii)    did not devote 90% of his business time and services to the business and
                interest of Pali Capital, but rather spent more than 10% of his time pursuing
                his personal interests and investments;

        (iii)   did not "carry out and perform directions and policies of [Pali Holdings,
                Inc.'s] Board of Directors," but consistently ignored the Board on matters
                requiring their approval;

(f)     did not perform his duties as Chief Executive Officer and Chairman "with
        fidelity and to the best of his ability" and did not "use his best efforts to
        promote the business of Pali Capital;"

(g)     has engaged "in conduct involving financial improprieties, theft, fraud, material
        violations of law relating to or affecting [Pali Holdings, Inc.] or its subsidiaries
        (including Pali Capital, Inc.) (including, without limitation, statues, orders, rules
        regulations or ordinances relating to or affect the registration, licensing and
        operations of [Pali Capital, Inc.];"

(h)    has engaged in conduct affecting the registration, licensing and operations of [Pali Capital, Inc.] as a broker-dealer by violating rules and regulations of the SEC, FINRA and the NASD; and

(i)    has acted "as an officer, employee, partner, director, member, creditor, consultant, agent or advisor to any ... 'Competitive Enterprise.'"

101.    Reifler's conduct under the Employment Agreement is tantamount to fraud and breach of fiduciary duty. Reifler is therefore obligated to pay to Pali all compensation paid to him pursuant to the Employment Agreement and has forfeited claims to any further compensation allegedly owed to him by Pali.

## VI.    Conversion - Reifler

102.    Pali realleges all of the preceding paragraphs of this pleading as if fully set forth herein.

103.    Both directly and through the actions of others taken at his direction and control, or with his approval, Reifler came to exercise unauthorized dominion and control over tens of millions of dollars of Pali's funds and assets as well as assets obtained by unauthorized use of Pali's assets,

104.    Reifler's dominion and control over the property has been to the exclusion of, and in defiance of, Pali's rights, or has otherwise interfered with the rights of Pali to such property.

105.    Pali has been damaged by Reifler's dominion and control in an amount to be determined in arbitration.

## VII.    Gross Mismanagement – Reifler

106.    Pali realleges all of the preceding paragraphs of this pleading as if fully set forth herein.

107.    At all relevant times, as Chairman, Chief Executive Officer, Director of Pali Holdings, Inc. and Pali Capital, Inc. and Chief Compliance Officer of Pali Capital, Inc.,

Reifler had a duty to Pali and its shareholders to prudently manage the assets and business of Pali, yet wrongfully failed to perform such duties

108.    As a direct result of Reifler's gross mismanagement as evidenced by the wrongdoing described in detail above and the breaches of duty alleged herein, Pali has sustained significant damages and injuries.

## VIII.   Waste Of Corporate Assets – Reifler

109.    Pali realleges all of the preceding paragraphs of this pleading as if fully set forth herein.

110.    As a result of Reifler's self-dealing, and by failing to properly consider the interests of Pali and its shareholders, Reifler has caused Pali to waste valuable corporate assets by, *inter alia*: 1) paying Reifler excessive compensation; 2) missing out on substantial amounts from corporate opportunities that Reifler should have, but did not, make available to Pali and did not bring to the attention of its board of directors; 3) causing the diminution in value of the stock of Pali as a result of Reifler's actions; and 4) expending millions of dollars in unnecessary legal and consulting fees.

## IX.    Abuse of Control - Reifler and Wasitowski

111.    Pali realleges all of the preceding paragraphs of this pleading as if fully set forth herein.

112.    By virtue of their positions and financial holdings in Pali, Reifler and Wasitowski exercised control over Pali and its operations, and owed a duty to Pali and its shareholders to: 1) manage Pali in a manner that benefited Pali and its shareholders and not their personal interests; 2) act in furtherance of the best interests of Pali; 3) govern Pali in a manner that benefits the company, and its shareholders, not their personal interests; 4) refrain

from abusing their positions of control, power, prestige and profit; 5) not favor their own interests at the expense of Pali; 6) truthfully, promptly, and accurately report on the status of Pali and its operations and finances to the shareholders; and 7) avoid and prevent corporate waste and unnecessary expense.

113.    Reifler and Wasitowski's conduct as set forth in detail above, amounts to an abuse of their control in violation of their obligations to Pali. Reifler and Wasitowski knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted one another in their abuse of control.

114.    As a direct and proximate result of Reifler and Wasitowski's abuse of control, Pali has suffered and will continue to suffer damages and injuries as alleged herein.

115.    The acts of Reifler and Wasitowski were done maliciously, oppressively, and with intent to defraud; and Pali is entitled to punitive and exemplary damages in an amount to be shown according to proof through this arbitration.

## X.    Unjust Enrichment – Reifler

116.    Pali realleges all of the preceding paragraphs of this pleading as if fully set forth herein.

117.    By his wrongful acts and omissions, Reifler was unjustly enriched at the expense of and to the detriment of Pali.

118.    Pali seeks restitution from Reifler, and seeks an order disgorging all profits, benefits and other compensation obtained by him from his wrongful conduct and fiduciary breaches.

119.    Pali seeks restitution and disgorgement of profits for the Company as hereinafter set forth.

120.   Pali seeks damages and other relief for the Company as hereinafter set forth.

## XI.   Sanctions Pursuant To FINRA Rules 13209 and 13212

121.   FINRA Rule 13209 prohibits a party to a FINRA arbitration proceeding from bringing an action in another forum that would resolve or address any of the claims pending in the arbitration.

122.   Despite the clear mandate of that Rule, after filing his Statement of Claim in this arbitration proceeding, Reifler brought a claim for accounting against Pali Holdings, Inc. in a New York State court based on the identical provision of Reifler's alleged Employment Agreement upon which Reifler bases his claim for accounting in this arbitration action. *See Reifler v. Pali Holdings, Inc.*, Index. No. 09/600749 (N.Y. Sup. Ct. Mar. 10, 2009).

123.   FINRA Rule 13212 provides for sanctions against a party "for failure to comply with any provision in the Code."

124.   Because Reifler's duplicative accounting claim in New York state court violates Rule 13209, Pali seeks all its attorney's fees, costs, and expenses incurred in defending that state court accounting action and all other just and proper relief available pursuant to Rule 13212.

### RELIEF REQUESTED

WHEREFORE Pali respectfully requests the entry of an arbitral award:

(a)   Against Reifler awarding Pali compensatory, consequential, special, and punitive damages in an amount to be proven in arbitration, together with prejudgment interest;

(b)   Ordering disgorgement of all compensation and benefits for all amounts received by Reifler and Wasitowski from the Company in an amount to be proven in

arbitration;

(c) Imposing a constructive trust on all of Reifler and Wasitowski assets in an amount to be set in arbitration;

(d) Ordering the forfeiture of all claims for further compensation allegedly owed by Pali to Reifler and Wasitwoski;

(e) Ordering Reifler and Wasitowski to repay Pali all legal and consulting fees incurred by Pali as a result of Reifler and Wasitowski's illegal acts of entrenchment;

(f) Ordering Reifler and Wasitowski to repay Pali all legal fees advanced to Reifler and Wasitowski for their defense of the derivative action and Article 78 proceedings;

(f) Awarding Pali post-judgment interest;

(g) Reimbursing Pali for all attorney's fees and costs incurred by them in the investigation and prosecution of this litigation;

(h) Reimbursing for the costs and expenses -- incurred beginning immediately after Reifler's forced resignation and continuing to this day -- associated with investigating his numerous acts of wrongdoing (as alleged herein) and taking required steps to correct and remediate that wrongdoing, including but not limited to the substantial costs and expenses associated with Pali's necessary retention of numerous professional advisors, consultants, and lawyers in that regard;

(i) Reimbursing Pali for all attorney's fees, costs, and expenses incurred in defending the duplicative state court accounting claim; and

(j) Awarding Pali such other and further relief as the arbitration panel deems just and proper.

In addition to the relief requested above in the form of an arbitral award, Pali also respectfully requests this Panel to refer the matters set forth in this pleading to the FINRA Department of Enforcement to enable the Department to address Reifler and Wasitowski's forgery, breaches of fiduciary duty, and other wrongdoing.

## STATEMENT OF ANSWER

Pali incorporates by reference in Pali's Statement of Answer the facts in paragraphs 1-75 above as if set forth fully herein.  Pali answers the allegations of Bradley Reifler's ("Claimant") Statement of Claim as follows:

1.      Pali admits Claimant is one of the founders and former Chief Executive Officer of Pali Capital, Inc. and from March 2007 until October 2008 was its Chairman.  Pali denies the remaining allegations of paragraph 1.  Answering further, Pali states that Claimant did not voluntarily resign from Pali but rather, was forced to resign in shame by Pali's Board of Directors after Claimant admitted his forgery of a proxy agreement and submission of that forgery to the New York Supreme Court.

2.      Pali denies the allegations of paragraph 2.

3.      Pali admits the allegations of paragraph 3.  Answering further, Pali denies Claimant is entitled to any of the relief he seeks in this proceeding.

4.      Pali admits Claimant Bradley Reifler is an individual residing and domiciled in the State of New York.  Pali admits Claimant is one of Pali's founders and is the single largest shareholder.  Pali denies that Clamaint voluntarily resigned in October 2008.  Pali admits that until the time of Claimant's forced resignation in October 2008, Claimant was Pali's Chairman and Chief Executive Officer.  Pali admits that until Claimant's forced resignation in October 2008, Claimant was a registered person, holding Series 7, 24, 63 and 3 licenses.  Pali admits Claimant's claim arises out of his business activities with Pali.  Pali admits that Claimant is an "associated person" whose disputes with Pali are subject to arbitration.  Answering further, Pali states that by submitting his disputes with Pali to this arbitration proceeding, Claimant has subjected himself to the jurisdiction of this forum to hear Pali's counterclaims against Claimant.

5.      Pali admits Pali is a registered broker-dealer organized and existing under the laws of the State of New York, with its principal office at 650 Fifth Avenue, 6th Floor, New York, New York 10019.  Pali admits it is a "member" who is properly compelled to defend against Claimaint's claims in the arbitral forum.  Answering further, Pali states that by submitting his disputes with Pali to this arbitration proceeding, Claimant has subjected himself to the jurisdiction of this forum to hear Pali's counterclaims against Claimant.

6.      Pali admits Claimant was one of the individuals who founded Pali's predecessor, Pali Capital, LLC, in 1995.  Pali admits Pali has generated close to $1 billion dollars in revenues.  Pali admits it experienced revenue growth in 2008 and grossed over $220 million in fiscal year 2008.  Pali denies the remaining allegations of paragraph 6.  Answering further, Pali states that although Pali experienced steady revenue growth, Pali experienced no growth in profitability.

7.      Pali lacks knowledge necessary to form a belief as to the truth of the allegations of subsections 7(a), (b), (d), (e), (f), and (g), and therefore denies those allegations. Pali admits Claimant personally guaranteed a multi-million dollar loan to the Company, which allowed the partial financing for Pali's employee stock purchase program, including Reifler's purchase of a substantial number of shares.  Pali denies the remaining allegations of paragraph 7. Investigation continues.

8.      Pali denies the allegations of paragraph 8 because Claimant was not entitled to any of the payment which Claimant claims he defrayed.

9.      Pali admits the allegations of paragraph 9.  Answering further, Pali states that to the extent the allegations of paragraph 9 purport to incorporate the heading "The Stock

Sale Compensation Agreement," Pali denies the existence of any such "Stock Sale Compensation Agreement."

10.     Pali admits that Claimant signed an agreement entitled "Employment Agreement" both on behalf of himself as an individual and on behalf of Pali Capital, Inc.  Pali denies the remaining allegations of paragraph 10.

11.     Pali admits that Section 3.1 of the Employment Agreement purports to govern certain compensation payments to Claimant.  Pali denies that any amounts are due to Claimant under Section 3.1.  Pali refers to the terms of the Employment Agreement itself for the exact terms purportedly contained in the Employment Agreement and denies any allegations of paragraph 11 inconsistent with those terms.

12.     Pali admits that Section of 3.2 of the Employment Agreement purports to govern certain rights to examine certain books and records.  Pali refers to the terms of the Employment Agreement itself for the exact terms purportedly contained in the Employment Agreement and denies any allegations of paragraph 11 inconsistent with those terms.

13.     Pali admits that Section of 6.5 of the Employment Agreement purports to govern certain payments upon termination of Claimant's employment.  Pali denies that any amounts are due to Claimant under Section 6.5.  Pali refers to the terms of the Employment Agreement itself for the exact terms purportedly contained in the Employment Agreement and denies any allegations of paragraph 13 inconsistent with those terms.

14.     Pali admits that Section of 6.5(a) of the Employment Agreement purports to govern certain payments in the event of Claimant's voluntary resignation.  Pali denies that any amounts are due to Claimant under Section 6.5(a).  Pali refers to the terms of the Employment Agreement itself for the exact terms purportedly contained in the Employment Agreement and

denies any allegations of paragraph 14 inconsistent with those terms. Answering further, Pali states that Claimant did not voluntarily resign from Pali but rather, was forced to resign in shame by Pali's Board of Directors.

15.     Pali admits Claimant received monthly "Due To" statements, which were prepared under Claimant's direction. Pali denies that Claimant was owed the monies shown in those statements and denies the remaining allegations of paragraph 15.

16.     Pali denies the allegations of paragraph 16.

17.     Pali denies the allegations of paragraph 17.

18.     Pali admits that Claimant received payments in form of purported "bonuses." Pali denies that Claimant was entitled to such "bonus" payments and denies the remaining allegations of paragraph 18.

19.     Pali denies the allegations of paragraph 19.

20.     Pali denies the allegations of paragraph 20.

21.     Pali admits Claimant was employed by Pali through October 31, 2008. Pali admits Claimant received payments purportedly made as "bonuses" during previous years. Pali denies that Claimant was entitled to these purported "bonus" payments and denies the remaining allegations of paragraph 21.

22.     Pali denies the allegations of paragraph 22.

23.     Pali admits that various materials, including art, furniture, and files remained in Pali's offices after Claimant's forced resignation. Pali denies that all of these materials are Claimant's personal possessions and denies the remaining allegations of paragraph 23. Answering further, Pali states that all of Claimant's personal belongings in Pali's offices have already been returned to him.

24.     Pali denies withholding any mail that properly belongs to Claimant. Pali admits that it has forwarded Claimant's mail to him on at least a monthly basis. Pali admits that mail has been opened but only to ensure that the contents do not relate to Pali's business. Pali denies the remaining allegations of paragraph 24.

25.     Pali denies the allegations of paragraph 25.

26.     The allegations with regard to Claimant's entitlement monies under the purported Agreements consist of legal conclusions requiring resolution of issues of contract interpretation to which an answer is neither required nor appropriate, and Pali therefore denies those allegations. Pali denies that Claimant is entitled to a bonus from and through the first ten months of 2008. Pali denies the remaining allegations of paragraph 26.

27.     Pali denies the allegations of paragraph 27.

28.     Pali denies the allegations of paragraph 28.

29.     Pali denies the allegations of paragraph 29.

30.     Pali denies the allegations of paragraph 30.

31.     Pali denies the allegations of paragraph 31.

32.     Pali denies the allegations of paragraph 32.

33.     Pali lacks knowledge necessary to form a belief as to the truth of the allegations regarding Claimant's expectation, and therefore denies them. Answering further, Pali denies that Claimant was entitled to any of the compensation alleged in paragraph 33 and denies the remaining allegations of paragraph 33.

34.     Pali denies the allegations of paragraph 34.

35.     Pali denies the allegations of paragraph 35.

36.     Pali denies the allegations of paragraph 36.

37.   Pali denies the allegations of paragraph 37.

38.   Pali denies the allegations of paragraph 38.

39.   Pali denies the allegations of paragraph 39.

40.   Pali denies the allegations of paragraph 40.

41.   Pali denies the allegations of paragraph 41.

42.   Pali admits that Pali has denied Claimant access to Pali's books and records.  Pali denies that Claimant has any right to such access and denies that any outstanding amounts are currently due and owing to Claimant.  Pali denies the remaining allegations of paragraph 42.

43.   Pali denies the allegations of paragraph 43.

44.   Pali admits the allegations of paragraph 44.

45.   Pali denies the allegations of paragraph 45.  Answering further, Pali states that Pali has already returned all property that personally belongs to Claimant.

46.   Pali denies the allegations of paragraph 46.

47.   Pali denies the allegations of paragraph 47.

48.   Pali admits the allegations of paragraph 48.

49.   Pali denies the allegations of paragraph 49.

## PALI'S AFFIRMATIVE DEFENSES TO REIFLER'S CLAIMS

1.    **The New York Faithless Servant Doctrine -** Pursuant to the faithless service doctrine, Reifler has forfeited all claims to any compensation allegedly owed to him by Pali since the date of Reifler's first breach of his fiduciary duties.  In addition, the faithless servant doctrine requires Reifler to disgorge to Pali all compensation paid to him from the date of Reifler's first breach of fiduciary duty.

2.    **Unclean Hands -** Pursuant to the doctrine of unclean hands, Reifler cannot seeks equitable relief against Pali where his own conduct relating to his claims for relief has been nothing short of inequitable, fraudulent, and illegal.  As a result, Reifler's equitable claims for quantum meruit, unjust enrichment, promissory estoppel, equitable accounting, injunctive relief, and any other claims for equitable relief must be denied.


Dated:          New York, New York            JENNER & BLOCK LLP
                May 8, 2009

                                              By:_____
                                              Richard F. Levy, Esq.
                                              919 Third Avenue, 37th Floor
                                              New York, New York 10022
                                              Tel: (212) 891-1600

*Attorney for Respondent Pali Capital, Inc.*